UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| DIANA DOE, by and through her parent and next friend David Doe, NATHAN NOE, by and through his parent and next friend Nicole Noe, and PARKER POE, <br><br> *Plaintiffs*. <br><br> v. <br><br> DEPARTMENT OF DEFENSE; PETE HEGSETH, in his official capacity as Secretary of Defense; ANTHONY J. TATA, in his official capacity as the Under Secretary of Defense for Personnel and Readiness; STEPHEN L. FERRARA, in his official capacity as Acting Assistant Secretary of Defense for Health Affairs; DEFENSE HEALTH AGENCY; and DAVID J. SMITH, in his official capacity as Acting Director of the Defense Health Agency, <br><br> *Defendants*. | Civil Action No. 8:25-cv-02947 <br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO FILE COMPLAINT UNDER SEAL AND FOR PROTECTIVE ORDER** |

Plaintiffs Diana Doe, Nathan Noe, and Parker Poe (collectively, "Plaintiffs"), are transgender minors and young adults who seek to set aside new rules issued by the Department of Defense ("DoD") and the Defense Health Agency ("DHA") prohibiting military hospitals and clinics from providing gender transition care, and TRICARE coverage for that care. These new rules were imposed without statutory authority, without the notice-and-comment procedures required by the Administrative Procedure Act, and without providing TRICARE beneficiaries the notice that federal law mandates. Plaintiffs also seek to enjoin Defendants from implementing President Trump's executive order directing agencies to eliminate federal funding for transgender

healthcare for people under the age of 19, including TRICARE coverage for that care, because the order violates separation of powers and conflicts with statutory law.

Plaintiffs' Complaint contains confidential biographical information that can be used to identify them, including Plaintiffs' ages, places of residence, and certain details of their medical histories and their parents' careers. Given the very small number of transgender adolescents who receive the medical care at issue in this case – and the even smaller number who are in military families – this information could easily be used to identify Plaintiffs. *Cf.* Maya Brownstein, *Gender-affirming medications rarely prescribed to U.S. adolescents*, HARVARD SCHOOL OF PUBLIC HEALTH (Jan. 6, 2025), https://perma.cc/XVB2-PJ8K (study found less than .1 percent of minors with private insurance were transgender and received puberty blockers or hormone treatment).

Plaintiffs seek to seal this identifying information to protect their privacy and to avoid grievous harassment, retaliation, and even violence they are likely to face due to significant social stigma against transgender persons, especially those who receive medical treatment for gender dysphoria and who assert their rights. Additionally, Plaintiffs have not disclosed their transgender status beyond a small, select number of individuals. If their transgender status is made public, they will be at risk of harm. Accordingly, Plaintiffs move for leave to file under seal certain portions of the complaint that contain Plaintiffs' confidential identifying information and for a protective order prohibiting Defendants' counsel from disclosing this information, including to Defendants.

## BACKGROUND

Plaintiffs rely upon and incorporate by reference their Complaint, which sets forth all relevant facts demonstrating their need to partially redact and file under seal certain information. Plaintiffs have been diagnosed with gender dysphoria, a serious medical condition characterized

by significant distress and impairment that occurs when a transgender individual is unable to transition and to live in a sex different than their birth sex.  Left untreated, gender dysphoria can cause debilitating and serious physical, psychological, and emotional harms.

To avoid these harms, Plaintiffs have received medically necessary gender transition care, including puberty blockers and hormone treatment.  Because Plaintiffs are dependents of active duty servicemembers, their gender transition care was covered by TRICARE and administered at military medical treatment facilities ("MTFs"), and plaintiffs could fill their prescriptions through military pharmacies.

Following an executive order issued by the President in January 2025, the DoD and the DHA suddenly adopted a categorical exclusion of gender transition care from TRICARE coverage for individuals under the age of 19 and banned MTFs from providing this care.  As a result, Plaintiffs and other transgender adolescents across the country were abruptly cut off from their treating providers, putting them at risk of losing access to health care they desperately need.  The new TRICARE policies also require them to pay for care out-of-pocket in the future, which is a significant expense and, for some, a potentially insurmountable financial burden.

Defendants' refusal to cover and provide medically necessary gender transition care has already caused significant harm to Plaintiffs.  Their prescriptions have been cut off without notice, their trusted military doctors forced to abandon them, and their families left facing crushing out-of-pocket costs or the risk of seeing their children's health deteriorate without these essential medications.  Unless coverage is restored, Plaintiffs and other transgender adolescents and young adult dependents of military servicemembers across the country will endure ongoing and escalating threats to their physical and psychological wellbeing.

**LEGAL STANDARD**

There is a qualified right of access to judicial records that "derives from two independent sources: the common law and the First Amendment." *United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 171 (4th Cir. 2024) (quoting *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004)). At common law, there is a presumption that the public can inspect and copy all judicial records, but this presumption can be rebutted if "countervailing interests heavily outweigh the public interests in access." *Id.* (quoting *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). In conducting this balancing test, the Fourth Circuit weighs three factors: (1) "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage;" (2) "whether release would enhance the public's understanding of an important historical event"; and (3) "whether the public has already had access to the information contained in the records" (hereinafter, the "*Knight* factors"). *In re Knight Pub. Co.*, 743 F.2d 231, 234–35 (4th Cir. 1984).

Unlike the common-law presumption, the First Amendment right of access extends only to judicial proceedings or records "(1) that ha[ve] historically been open to the press and general public; and (2) where public access plays a significant positive role in the functioning of the particular process in question." *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 326 (4th Cir. 2021) (cleaned up). In *Schaefer*, the Fourth Circuit held that the public has a First Amendment right to access newly filed civil complaints. *Id.* But even this First Amendment right has limits; a court may restrict access to a civil complaint if it is "necessitated by a compelling government interest and the denial of access is narrowly tailored to serve that interest." *Oberg*, 105 F.4th at 171 (quoting *Doe v. Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014)).

**ARGUMENT**

I. **Sealing Plaintiffs' identifying information in the Complaint is warranted.**

Plaintiffs' safety and privacy interests far outweigh the Defendants' and the public's common law interest in accessing Plaintiffs' identifying information. Indeed, all three of the *Knight* Factors weigh in favor of sealing this information. The first factor—whether this information is "sought for improper purposes"—weighs heavily in favor of sealing Plaintiffs' identifying information. Because there is immense social stigma against transgender persons—especially those receiving gender transition care and asserting their civil rights in court—Plaintiffs' identifying information is likely to be misused to find Plaintiffs and harass, retaliate against, or even physically harm them. Plaintiffs are also at risk of having their transgender status publicly disclosed, which would cause them severe harm given that Plaintiffs have continuously kept that information private. The high risk that Plaintiffs' identifying information will be used for these improper purposes more than justifies sealing that information.

The second *Knight* factor—whether this information "enhance[s] the public's understanding of an important historical event"—also weighs in favor of sealing. Plaintiffs' identifying information—including their ages, locations, and certain details about their medical histories and parents' careers—is not necessary for the Defendants or the public to understand the allegations in the Complaint or any document subsequently filed in this action. *See M.P. v. Schwartz*, 853 F. Supp. 164, 168 (D. Md. 1994) (finding second *Knight* factor is met because "any interest . . . the public might have in learning about potential problems in the Montgomery County Department of Social Services can be satisfied by perusal of the Complaint without the name of the particular child and her family included"); *PFLAG, Inc. v. Trump*, 766 F. Supp. 3d 535, 549, n.14 (D. Md. 2025) ("If the government needs to know the identities of the individual plaintiffs to defend this case, it may file a request for relief from the court."). In fact, the proposed redactions

5

are purposefully narrow to ensure that only the most important identifying information will be protected.

Finally, the third factor weighs in favor of sealing because the public does not already have access to Plaintiffs' private identifying information.

Moreover, restricting access to this information does not violate the First Amendment because it serves a compelling state interest in safeguarding the physical and psychological well-being of transgender persons, especially transgender minors and young adults, a group that faces significant social stigma and high rates of discrimination, harassment, retaliation, and even violence.[1] *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993) (redressing and curbing "bias-motivated crimes" is a significant state interest); *People v. MacKenzie*, 34 Cal. App. 4th 1256, 1272 (1995) ("curbing hate crimes and providing protection against the special harms they inflict on individual victims, their communities, and society at large" is a compelling state interest); *Globe Newspaper Co. v. Super. Court of Norfolk Cnty*, 457 U.S. 596, 607–08 (1982) ("safeguarding the physical and psychological well-being of a minor" is a compelling state interest); *M.P.*, 853 F. Supp. at 168 ("the privacy of a minor" is a compelling state interest and "a pervasive feature of American law"). This compelling state interest far outweighs the public's right to access this information, especially because the proposed redactions are narrowly tailored to restrict access only to the most important identifying information without affecting the public's ability to meaningfully engage with the allegations in the Complaint or the legal and policy issues

---

[1] *See, e.g.*, *Hersom v. Crouch*, No. 2:21-CV-00450, 2022 WL 908503, at *2 (S.D. W.Va. Mar. 28, 2022) (noting that "transgender individuals often face verbal and physical harassment when forced to reveal their transgender status"); Andrew Flores, et al., *Gender Identity Disparities in Criminal Victimization: National Crime Victimization Survey, 2017–2018*, 111 AM. J. PUBLIC HEALTH 726 (2021) (finding that transgender individuals are more than four times more likely to be victims of violent crimes than other individuals).

presented by this action.  *See Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 66 (4th Cir. 1989) ("giving access to a redacted version" of a sealed document is a narrowly tailored way to serve the countervailing state interest).

II.  **A protective order for Plaintiffs' identifying information is warranted.**

Under Federal Rule of Civil Procedure 26(c), a court may issue a protective order to protect a party from harassment, retaliation, or any other form of discrimination and violence that might result from participating in the litigation.  A court in this district recently issued such a protective order in a civil rights case to protect transgender adolescents "from undue harassment, discrimination, and violence because of [their] transgender status." *PFLAG, Inc.*, 766 F. Supp. at 549, n.14.  The same is required here, not only because Plaintiffs are at risk of the same harassment, discrimination, and violence, but also because their parents are current and former federal employees and servicemembers of the armed forces who might face retaliation from the Defendants (their employers or the administrators of their retirement benefits).  In fact, there is a documented history of Defendants publicly disparaging and retaliating against their own employees and members of the armed forces.  *See, e.g.*, Pete Hegseth (@PeteHeseth), X (Sep. 4, 2025), https://x.com/PeteHegseth/status/1963781182715261326 ("Pronouns updated: She/Her/Fired"); *see also* New York Times, People Are Going Silent: Fearing Retribution, Trump Critics Muzzle Themselves (Mar. 6, 2025), https://www.nytimes.com/2025/03/06/us/politics/trump-democracy.html ("People say they are intimidated by online attacks from the president, concerned about harm to their businesses or worried about the safety of their families.").  Therefore, Plaintiffs seek a protective order to prevent Defendants' counsel from disclosing Plaintiffs' identifying information, including ages, locations, and certain details of their medical histories and parents' careers, including to Defendants.

In sum, Plaintiffs' safety and privacy interests in protecting their identities far outweigh the public's right to access this information under the common law or the First Amendment. Biographical details such as Plaintiffs' ages, locations, and certain details of their medical histories and parents' careers provide an easy means of identifying them and can be misused by people who seek to harm them. The Court must therefore seal this information to protect Plaintiffs from the harms of publicizing their identities.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion (1) to partially seal their Complaint and any attachments thereto pursuant to Local Rule 105.11, and (2) to issue a related protective order that prohibits Defendants' counsel from disclosing Plaintiffs' identifying information, including ages, locations, and certain details of their medical histories and parents' careers, including to Defendants.

Respectfully submitted,

BROWN GOLDSTEIN & LEVY LLP

Dated:  September 8, 2025         /s/ *Eve Hill*

EVE HILL (Bar No. 19938)
120 East Baltimore Street, Suite 2500
Baltimore, MD  21202
Telephone:    (410) 962-1030
Facsimile:    (410) 385-0869
ehill@browngold.com


KEKER, VAN NEST & PETERS LLP


        /s/ *Sharif E. Jacob*
SHARIF E. JACOB (*Pro Hac Vice Pending*)
LUIS G. HOYOS (*Pro Hac Vice Pending*)
SARA R. FITZPATRICK (*Pro Hac Vice Pending*)
LIAM BROWN (*Pro Hac Vice Pending*)
633 Battery Street
San Francisco, CA 94111-1809

Telephone: 415 391 5400
Facsimile: 415 397 7188
sjacob@keker.com
lhoyos@keker.com
sfitzpatrick@keker.com
liambrown@keker.com

GLBTQ LEGAL ADVOCATES & DEFENDERS

_____/s/ *Jennifer Levi*_____
JENNIFER LEVI (*Pro Hac Vice Pending*)
SARAH AUSTIN (*Pro Hac Vice Pending*)
HANNAH HUSSEY (*Pro Hac Vice Pending*)
ELIZABETH RODRIGUEZ-ROSS (*Pro Hac Vice Pending*)
18 Tremont Street, Suite 950
Boston, MA 02108
Telephone:   (617) 778-6961
Facsimile:    (617) 426-3594
jlevi@gladlaw.org
saustin@gladlaw.org
hhussey@gladlaw.org
erodriguezross@gladlaw.org

NATIONAL CENTER FOR LGBTQ RIGHTS

_____/s/ *Shannon Minter*_____
SHANNON MINTER (*Pro Hac Vice Pending*)
CHRISTOPHER F. STOLL (*Pro Hac Vice Pending*)
1401 21st Street, #11548
Sacramento, CA 95811
Telephone:   (415) 365-1320
Facsimile:    (415) 392-8442
sminter@nclrights.org
cstoll@nclrights.org

*Attorneys for Plaintiffs*
*DIANA DOE, by and through her parent and next of friend David Doe, NATHAN NOE, by and through his parent and next of friend Nicole Nelson, and PARKER POE*

9